$\jmath^3$

FILED

SEP 19 2008

KT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 05-60471-A-7 |
| JOSEPHINE BELLARDITA, | |
| Debtor. | |
| _____/ | Adv. No. 06-1100 |
| BETH MAXWELL STRATTON, Ch. 7 Trustee, | |
| Plaintiff, | |
| vs. | FINDINGS OF FACT AND |
| VITA BELLA GROUP HOMES, INC., and | CONCLUSIONS OF LAW |
| JOSEPHINE BELLARDITA as Trustee of THE | |
| ROSARIO BELLARDITA FAMILY TRUST | |
| Defendants. | |
| _____/ | |

Josephine Bellardita filed her chapter 7 case on October 14, 2005.  Beth Maxwell

Stratton (the "Trustee" or the "Plaintiff") was appointed the chapter 7 trustee.  This adversary

proceeding was timely filed by the Plaintiff on March 9, 2006.  Trial was held May 8, 2008 and

May 9, 2008.

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § §

1334(b) and 157(a).   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

The court, having considered the testimony of the witnesses, the exhibits entered into

evidence, and the arguments of the parties, makes the following findings of fact and conclusions

of law pursuant to Federal Rule of Civil Procedure 52, as incorporated into Federal Rule of

Bankruptcy Procedure 7052.

1

$\jmath^5$

**FINDING OF FACTS**

## I.    Procedural History

On March 9, 2006, the Trustee  timely filed a complaint initiating this adversary proceeding.  The Trustee filed a first amended complaint on June 19, 2006, and a second amended complaint on January 10, 2007.  The second amended complaint names as defendants Vita Bella Group Homes, Inc. ("Vita Bella Group Homes") and Josephine Bellardita in her capacity as trustee of The Rosario Bellardita Family Trust.  It  requests relief under 11 U.S.C. § 548 and seeks to avoid two allegedly fraudulent pre-petition transfers.  In the complaint, the Plaintiff alleges that on March 15, 2005, Josephine Bellardita owned and held record title to three parcels of real property, all located in Merced, California.  The properties are located at  1791 West 8th Street, Merced, CA 95340 (the "West 8th Street Property");  3156 Juneau Court, Merced, CA 95340 (the "Juneau Court Property") ; and 919 D Street, Merced, CA 95340 (the "D Street Property").

The Plaintiff's second amended complaint asserts six claims for relief.  The first through fourth claims are based upon § 548(a)(1), which provides that a bankruptcy trustee may avoid a debtor's fraudulent transfers and obligations.  Specifically, the Plaintiff asserts in her first claim for relief that Josephine Bellardita made the transfers of the three real property parcels to Vita Bella Group Homes on March 15, 2005, with actual intent to hinder, delay, or defraud her creditors, in violation of § 548(a)(1)(A).  The Plaintiff asserts in her second claim for relief that the transfers were made for less than a reasonably equivalent value and that Josephine Bellardita was insolvent at the time of the transfers or became insolvent as a result of the transfers, in violation of § 548(a)(1)(B).  The Plaintiff's third claim is for fraudulent transfer under an alternate provision of § 548(a)(1)(B), which requires that the transfers be made for less than a reasonably equivalent value and at a time when the debtor was engaged in a business or transaction for which any property remaining with the debtor after the transfer was an unreasonably small capital.  Additionally, in her fourth claim for relief, under § 548(a)(1)(A), the Plaintiff asserts that Vita Bella Group Homes made the transfers of the real property back to

2

Josephine Bellardita as trustee of The Rosario Bellardita Family Trust with actual intent to hinder, delay, or defraud creditors of Josephine Bellardita.

The fifth claim for relief is for alter ego liability. The Plaintiff contends that Josephine Bellardita acting in her individual capacity, Josephine Bellardita acting on behalf of Vita Bella Group Homes, and Josephine Bellardita acting as trustee of The Rosario Bellardita Family Trust were alter egos of one another. Finally, in her sixth claim, the Plaintiff requests an order determining the nature, extent, and validity of the Defendants' interests in the real property parcels to determine whether the parcels can be sold or should be abandoned.

The Defendants filed an answer to the second amended complaint on January 22, 2007, generally denying the allegations in the complaint. On November 7, 2007, the Plaintiff filed motions to compel responsive documents and responses to interrogatories. On November 13, 2007, the Defendants' attorney filed a motion to withdraw as the attorney of record. The court granted the motion.

On December 5, 2007, the court granted the Plaintiff's motions to compel and ordered the Defendants to produce the documents and provide responses by January 8, 2008. The Defendants failed to obey the orders, and on January 14, 2008, the court sanctioned the Defendants by declaring that certain issues in the case were deemed resolved.[1] The Defendants

---

[1]The court entered two orders – one on the Plaintiff's motion to compel production of documents and one on the Plaintiff's motion to compel responses to interrogatories. The order on the Plaintiff's motion to compel production of documents deemed four issues to be resolved for purposes of this action. The order on the Plaintiff's motion to compel responses to interrogatories deemed eight issues to be resolved for purposes of this action – the four already deemed resolved as a result of the Defendants' failure to comply with the order to compel production of documents, as well as four new issues. In total, the court ordered the following eight issues to be deemed resolved:

(1)    The assertion of Josephine Bellardita that she is, in fact, the trustee of an inter vivos trust for Rosario Bellardita is false.

(2)    The purchases of the three properties which are the subject of the lawsuit were not funded by Rosario Bellardita, as the Debtor contends.

(3)    The source of the money in the Merrill Lynch account that is titled in the name of Rosario Bellardita was and is Josephine Bellardita.

(4)    The personal funds of Josephine Bellardita were used to purchase the three properties which are the subject of the lawsuit.

3

were also ordered to pay $2,320.00 to the Plaintiff as part of the court's sanctions. At trial, the Plaintiff was represented by her attorney. Vita Bella Group Homes was not represented by counsel and thus did not appear.[2] Josephine Bellardita appeared pro se.

**II.    The Evidence at Trial**

The court admitted into evidence Plaintiff's Exhibits 4, 10, 11, 13, 15 through 21, 25, and 26. The court also admitted into evidence Defendants' Exhibits 1, 5, 7, 8, 9, 11, 14, 16 through 25, 27 through 31, 35 through 43, 47, 49 through 59, 61 through 67, 71, 74, 76 through 81, 83, 84, and 89.

Plaintiff's Exhibit 1 is an eleven page "Trust Agreement," establishing The Rosario Bellardita Family Trust and naming Josephine Bellardita as the trustee.[3] Plaintiff's Exhibit 14 is a "Trust to Entity Agreement and Transfer Proposal" between The Rosario Bellardita Family Trust and Vita Bella Group Homes.[4] It states that The Rosario Bellardita Family Trust intends to transfer assets to Vita Bella Group Homes.

Plaintiff's Exhibits 4, 10, and 13 are grant deeds to the West 8th Street, Juneau Court, and D Street Properties.[5] These deeds were recorded on February 22, 2001, March 26, 2001, and May 9, 2002, respectively. The three grant deeds show that Josephine Bellardita took title to the

---

(5)    To the extent that The Rosario Bellardita Family Trust nominally contains assets, those assets were transferred to the said Trust by Josephine Bellardita.

(6)    The resources and/or credit of Rosario Bellardita was not used to acquire the three real property parcels that are the subject of the lawsuit.

(7)    No assets of Rosario Bellardita or The Rosario Bellardita Family Trust were used to establish Vita Bella Group Homes.

(8)    No consideration was given by Vita Bella Group Homes or by The Rosario Bellardita Family Trust for the three real property transfers alleged in the adversary complaint.

[2]After its attorney withdrew, Vita Bella Group Homes failed to retain new counsel.

[3]Plaintiff's Exhibit 1 is the same as Defendants' Exhibit 1.

[4]Plaintiff's Exhibit 14 is the same as Defendants' Exhibit 14.

[5]Exhibits 4, 10, and 13 are the same as Defendants' Exhibits 21, 29, and 41.

properties as a single or unmarried woman. According to the grant deeds and title company settlement statements, Josephine Bellardita purchased the West 8th Street Property for $74,752.00, the Juneau Court Property for $71,000.00, and the D Street Property for $95,000.00. Plaintiff's Exhibit 15 contains two grant deeds, which show that on October 30, 2001, Josephine Bellardita transferred the West 8th Street and Juneau Court Properties to Vita Bella Group Homes.[6]  Plaintiff's Exhibit 19 is a grant deed recorded on June 4, 2002, which shows that Josephine Bellardita transferred the D Street Property to Vita Bella Group Homes.[7]

Plaintiff's Exhibits 16 and 20 are grant deeds recorded on October 18, 2002.[8]  The deeds show that Vita Bella Group Homes transferred all three property parcels back to Josephine Bellardita, as a single woman.  Plaintiff's Exhibit 17 contains three grant deeds showing that on March 15, 2005, Josephine Bellardita re-transferred the three properties to Vita Bella Group Homes.[9]  Plaintiff's Exhibit 18 also contains three grant deeds showing that on August 8, 2005, Vita Bella Group Homes re-transferred the three properties to Josephine Bellardita, but this time in her capacity as trustee of The Rosario Bellardita Family Trust.[10]

Based on Josephine Bellardita's testimony at trial and Schedules A, B, D, and F of her bankruptcy petition,[11] the court finds that at the time of the transfers, Josephine Bellardita's assets comprised no more than, $1,872.54, more or less, and her debts totaled approximately $287,518.00, more or less.  Of her debts, approximately $148,000.00 is the amount she owed to her former attorney, Cyril Lawrence, as a result of a judgment against her on March 11, 2005.

---

[6]Plaintiff's Exhibit 15 is the same as Defendant's Exhibits 22 and 30.

[7]Plaintiff's Exhibit 19 is the same as Defendants' Exhibit 42.

[8]Plaintiff's Exhibits 16 and 20 are the same as Defendants' Exhibit 23, 31, and 43.

[9]Plaintiff's Exhibit 17 is the same as Defendants' Exhibits 51, 57, and 66.

[10]Plaintiff's Exhibit 18 is the same as Defendants' Exhibits 52, 58, and 67.

[11] In Josephine Bellardita's petition, she listed no real property and no secured creditors. She listed the value of her personal property assets as being $1,872.54 and the sum of her creditor's unsecured nonpriority claims as totaling $287,518.00.

5

1    Josephine Bellardita denied that she was the president of Vita Bella Group Homes, even

2    though she signed the August 8, 2005 grant deeds as such. She also denied having personally

3    purchased the three real property parcels even though the grant deeds to those properties show

4    that title was taken in her name as either a single or unmarried woman.  She testified that the

5    reason she did not sign as "Josephine Bellardita, trustee" was that Cyril Lawrence told her to sign

6    as "Josephine Bellardita, a single woman."  Josephine Bellardita further testified that the

7    purchases of the three real property parcels were financed solely by her brother, Rosario

8    Bellardita.

9    Josephine Bellardita also attempted to use four letters purportedly written by Cyril

10   Lawrence to explain why she had taken title to the properties in the grant deeds as a single or

11   unmarried woman.   Cyril Lawrence denied having written any letters to Josephine Bellardita

12   urging her to take title to the grant deeds for group homes as "Josephine Bellardita, a single

13   woman."  He testified that the letterhead on the letters appeared to be his letterhead and that the

14   signatures on those letters appeared to be his signatures, but he disputed writing the letters.  The

15   court deemed the four letters inadmissible because the purported author of the letters did not

16   authenticate the letters.[12]

17   Additionally, the court is not persuaded that the letters purporting to be from Cyril

18   Lawrence, advising Josephine Bellardita to take title in her name as an individual, are authentic.

19   Typed underneath the "Very Truly Yours" closing, the name of Cyril Lawrence's professional

20   corporation ("Cyril Lawrence, Inc.") is misspelled.  Instead of "CYRIL LAWRENCE,  INC." as

21   it is spelled in the letterhead, there is an extra "L" in Cyril Lawrence's first name.  The letters

22   incorrectly say "CYRILL LAWRENCE, INC."   It is unlikely that Cyril Lawrence would

23   misspell his own name in four different letters, spanning a period of four months.[13]  The court

24

25        [12]At trial, Cyril Lawrence testified that he was not the author of the letters because the
26   letters did not contain a four-digit file number, and further, that he would not have written at least
     one of the letters because he "wouldn't advise anybody on how they should treat their finances."
27
           [13]The letters are dated January 3, 2001; February 15, 2001; March 11, 2001; and April 28,
28   2001.

1    also notes that at trial, Cyril Lawrence did not dispute that Defendants' Exhibit 37 was an
2    authentic letter, and the court admitted it into evidence. Defendants' Exhibit 37 is a letter written
3    by Cyril Lawrence on May 25, 2001, discussing Vita Bella Group Homes. The letter contains a
4    file number in the subject line and does not contain the same misspelling of Cyril Lawrence's
5    name in the signature portion. ·

6         In the upper left hand corner of each disputed letter, underneath the letterhead, is
7    Josephine Bellardita's name and address. Josephine Bellardita's street name is "R" Street, with
8    the "R" in double quotation marks. The disputed letters have the "R" in "R" Street set off using
9    curved quotation marks, whereas the admitted letter (Defendants' Exhibit 37) has the "R" in "R"
10   Street set off using straight quotation marks. This difference indicates that the font used in the
11   letters are not the same. For all these reasons, the court finds that the letters are not authentic.

12        In addition to his testimony about the four letters, Cyril Lawrence testified that he is an
13   attorney licensed to practice in the state of California and that until November 8, 2001, he served
14   as counsel for Josephine Bellardita. He testified that during the course of his representation of
15   Josephine Bellardita, she mentioned her mother, father, and a brother named Anthony. However,
16   Josephine Bellardita never mentioned that she had a brother named Rosario.

17        The court find Cyril Lawrence to be a credible witness and that his testimony is credible.
18   In contrast, the testimony of Josephine Bellardita lacks credibility.

19        At trial, Josephine Bellardita denied that she was the president of Vita Bella Group
20   Homes, yet she signed her name above "Vita-Bella Group Homes, Inc., Josephine Bellardita,
21   president" on three different grant deeds. Therefore, the grant deeds contradict Josephine
22   Bellardita's testimony.

23        To prove that Josephine Bellardita had purchased the group homes using her personal
24   funds, the Plaintiff introduced Plaintiff's Exhibits 27 and 28, which were Josephine Bellardita's
25   deposition transcripts taken in connection with a civil action filed in state court. The transcripts
26   contain unexecuted court reporter's certificates and unsigned declarations by the deponent. In
27   the transcripts, Josephine Bellardita allegedly admitted her ownership of the three real property
28   parcels. However, at trial, Josephine Bellardita denied that the transcripts represented her

1  testimony accurately and claimed that she had not been given an opportunity to review and
2  correct the transcripts. The court ruled Exhibits 27 and 28 inadmissible as substantive evidence
3  but allowed their use for impeachment purposes because they constitute extrinsic evidence of the
4  witness's prior inconsistent statements pursuant to Federal Rule of Evidence 613.

5      Defendant's Exhibits 68, 69, and 70, consisting of letters addressed to Josephine
6  Bellardita, were admitted for a limited purpose only – to show that Josephine Bellardita received
7  the letters, and not for the truth of the matter asserted.

8
9
10                    **CONCLUSIONS OF LAW**
11  **I.    Fraudulent Transfer Under 11 U.S.C. § 548(a)(1) (1st through 4th claims)**
12      A fraudulent transfer is essentially any act that has the effect of improperly placing assets
13  beyond the reach of creditors. 4 ALAN N. RESNICK & HENRY J. SOMMER EDS., COLLIER ON
14  BANKRUPTCY ¶ 548.01 (15th ed., rev. 2007). Section 548(a)(1) of the Bankruptcy Code governs
15  fraudulent transfers, and provides that the bankruptcy trustee may avoid any transfer of an
16  interest of the debtor in property or any obligation incurred by the debtor, that was made or
17  incurred within one year before the date of the filing of the petition[14], in certain circumstances.
18  11 U.S.C. § 548(a)(1) (1998). There are two types of fraudulent transfers under § 548(a)(1) –
19  fraudulent transfer as a result of actual fraud (§ 548(a)(1)(A)) and fraudulent transfer as a result
20  of constructive fraud (§ 548(a)(1)(B)). The Plaintiff's second amended complaint alleges
21  fraudulent transfer under both §§ 548(a)(1)(A) and 548(a)(1)(B).

22
23

---

24      [14]    The one-year reachback period applies only to bankruptcy cases filed prior to the
25  enactment of BAPCPA. For cases filed after BAPCPA was enacted, there is a two-year
26  reachback period for fraudulent transfers. See 11 U.S.C. § 548(a)(1) (2005). Specifically, the
27  two-year reachback period applies to cases filed on or after April 21, 2006. See Bankruptcy
   Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1406(b)(2) (2005).
28  As already noted, Josephine Bellardita filed her bankruptcy petition on October 14, 2005.
   Therefore, the Bankruptcy Code as it existed pre-BAPCPA applies in this adversary proceeding.

1

2

**A.    Fraudulent Transfer Due to Actual Intent to Hinder, Delay, or Defraud Creditors (11 U.S.C. § 548(a)(1)(A))**

3    The Plaintiff's first and fourth claims for relief are based upon § 548(a)(1)(A). That

4  provision of the Bankruptcy Code provides, in relevant part, that the trustee may avoid any

5  transfer of an interest of the debtor in property that was made within one year before the date of

6  the filing of the petition, if the debtor voluntarily or involuntarily made such transfer with actual

7  intent to hinder, delay, or defraud creditors. See 11 U.S.C. § 548(a)(1)(A). There are three

8  requirements for a fraudulent transfer under § 548(a)(1)(A): (1) a transfer by the debtor of

9  property; (2) the transfer was made during the one year period prior to the petition date; and (3)

10  the transfer was made with actual intent to hinder, delay, or defraud creditors.

11    In this case, two of the requirements of § 548(a)(1)(A) are easily satisfied. As shown by

12  the grant deeds offered by both parties into evidence, the debtor, Josephine Bellardita, transferred

13  the three real property parcels to Vita Bella Group Homes. The grant deeds were properly

14  notarized and recorded. The grant deeds also show that the transfers took place on March 15,

15  2005, which was within the one year period prior to Josephine Bellardita's bankruptcy, filed

16  October 14, 2005. Therefore, the only remaining requirement is that Josephine Bellardita's

17  transfers of the real property parcels were made with actual intent to hinder, delay, or defraud

18  creditors.

19    The trustee bears the burden of proof on entitlement to avoidance. 4 COLLIER ON

20  BANKRUPTCY ¶ 548.10. The courts are not in agreement about the evidentiary standard by which

21  the trustee must prove fraudulent transfer under § 548(a)(1)(A). Some courts require

22  preponderance of the evidence. See e.g., Baldi v. Lynch (In re McCook Metals), 319 B.R. 570,

23  587 n.11 (Bankr. N.D. Ill. 2005); Thompson v. Jonovich (In re Food & Fibre Protection), 168

24  B.R. 408, 418 (Bankr. D. Ariz. 1994); Samore v. Breuer (In re Breuer), 68 B.R. 48, 51 (Bankr.

25  N.D. Iowa 1985). Some courts require clear and convincing evidence. See e.g., Whitaker v.

26  Mortgage Miracles, Inc. (In re Summit Place, LLC), 298 B.R 62, 70 (Bankr. W.D. N.C. 2002);

27  Talbot v. Warner (Matter of Warner), 65 B.R. 512, 518 (Bankr. S.D. Ohio 1986). Still other

28  courts decline to decide one way or another. See e.g., Taylor v. Rupp (In re Taylor), 133 F.3d

9

1336, 1338 (10th Cir. 1998) (stating that whether the trustee must show actual fraud by a clear and convincing evidence standard or only by a preponderance of the evidence standard, "we need not decide because . . . the trustee's evidence met the higher standard.").

This court holds that the proper evidentiary standard in § 548(a)(1)(A) cases is the ordinary preponderance of the evidence standard.

In <u>Grogan v. Garner</u>, 498 U.S. 279 (1991), the Supreme Court held that the preponderance of the evidence standard – and not the clear and convincing evidence standard – applies to the dischargeability exceptions listed in § 523. <u>Grogan</u>, 498 U.S. at 291. The Bankruptcy Appellate Panel for the Ninth Circuit expanded upon <u>Grogan</u> in <u>Western Wire Works, Inc. v. Lawler</u> (<u>In re Lawler</u>), 141 B.R. 425 (B.A.P. 9th Cir. 1992), applying the Supreme Court's preponderance of the evidence standard to actions to deny a debtor's discharge under § 727.   Section 727 governs discharges and provides that the court shall grant the chapter 7 debtor a discharge, unless one of the enumerated exceptions applies.  One such exception is almost identical to § 548(a)(1)(A).  Section 727(a)(2)(A) provides, in relevant part, that discharge may be denied if the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate, has transferred property of the debtor within one year before the date of the filing of the petition.  11 U.S.C. § 727(a)(2)(A).

It would be anomalous for this court to apply the preponderance of the evidence standard to an action to deny a debtor's discharge pursuant to § 727(a)(2)(A) and the heightened clear and convincing evidence standard to an action for avoidance of a fraudulent transfer pursuant to § 548(a)(1)(A) when both contain essentially the same requirements.  The court also notes that under California's state fraudulent transfer law, whether there is actual intent to hinder, delay, or defraud is a question of fact to be determined by a preponderance of the evidence.  <u>See</u> <u>Wolkowitz v. Beverly</u> (<u>In re Beverly</u>), 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007).  While not dispositive, it further supports this court's application of the preponderance of the evidence standard, since California's state fraudulent transfer law regarding intentional acts constituting fraudulent transfers is similar to the fraudulent transfer provisions of § 548(a)(1)(A).  <u>See</u> CAL. CIV. CODE § 3439.04(a)(1).

10

1    **1.    First claim for relief: Transfers from Josephine Bellardita to Vita Bella**

2    **Group Homes made with actual fraudulent intent**

3        For the reasons set forth below, the court concludes that the Plaintiff has met her burden

4    of proof that Josephine Bellardita's transfers of the three parcels of real property on March 15,

5    2005, were made with actual intent to hinder, delay, or defraud creditors under § 548(a)(1)(A).

6        **a.    Proof of actual intent to hinder, delay, or defraud creditors by**

7        **use of badges of fraud**

8        A finding of fraudulent intent under § 548(a)(1)(A) may be made on the basis of

9    circumstantial evidence. Barclay v. MacKenzie (In re AFI Holding, Inc.), 525 F.3d 700, 704 (9th

10   Cir. 2008). Courts rely on the use of certain indicia of fraud – commonly referred to as "badges

11   of fraud" – because intent to defraud is difficult to prove. See Kupetz v. Wolf, 845 F.2d 842, 846

12   (9th Cir. 1988); see also Acequia Inc. v. Clinton (In re Acequia), 34 F.3d 800, 805-06 (9th Cir.

13   1994) ("[i]t is often impracticable, on direct evidence, to demonstrate an actual intent to hinder,

14   delay or defraud creditors. Therefore, . . . courts applying Bankruptcy Code § 548(a)(1)

15   frequently infer fraudulent intent from the circumstances surrounding the transfer, taking

16   particular note of certain recognized indicia or badges of fraud."); 4 COLLIER ON BANKRUPTCY

17   ¶ 548.04[2][a] ("[p]roving that a transfer was made with actual intent to hinder, delay, or

18   defraud creditors requires a subjective inquiry into the transferor's state of mind at the time the

19   transfer was made. Rarely will the transferor admit to acting with a fraudulent purpose.").

20       The Ninth Circuit has articulated that among the more common circumstantial indicia of

21   fraudulent intent at the time of the transfer are: (1) actual or threatened litigation against the

22   debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency

23   or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between

24   the debtor and the transferee; and, after the transfer, (5) retention by the debtor of the property

25   involved in the putative transfer. In re Acequia, 34 F.3d at 806.

26       Generally, "[t]he presence of a single badge of fraud may spur mere suspicion; the

27   confluence of several can constitute conclusive evidence of actual intent to defraud, absent

28   'significantly clear' evidence of a legitimate supervening purpose." Id. at 806. However, the use

11

of badges of fraud to find fraudulent intent is a non-mechanical, fact-specific inquiry. See Richardson v. Germania Bank, 263 F. 320 (2d Cir. 1919) ("[t]he elements productive of . . . intent [to hinder, delay, or defraud creditors] . . . can never be defined. They vary as do facts . . . . Testimony can never be tested or weighed by machine.").

Considering the common badges of fraud identified by the Ninth Circuit, the court finds that all five of the five common badges of fraud are present in this case.

First, at the time Josephine Bellardita transferred the properties, there was actual litigation against her. Josephine Bellardita admitted at trial that around the time of the transfers, her largest creditor, Cyril Lawrence, received a judgment against her. The court takes judicial notice of Proof of Claim No. 7, filed by Cyril Lawrence in Josephine Bellardita's chapter 7 case. The Proof of Claim shows that a judgment after jury trial was entered March 11, 2005, and that a notice of entry of judgment after jury trial was filed March 14, 2005. Josephine Bellardita's transfers of the real properties to Vita Bella Group Homes took place on March 15, 2005, shortly after the judgment date.

Second, the transfer was for all or substantially all of the debtor's property. Without considering the three real property parcels at issue in this case, Josephine Bellardita only owned approximately $1,872.54 in assets – according to Josephine Bellardita's bankruptcy petition and her testimony at trial. Her single most significant asset at the time of filing was listed in Schedule B of her petition as being a $935.00 retainer deposit held by a former attorney, followed by $388.00 in household furnishings. Thus, the transfers of the three real property parcels were of substantially all of Josephine Bellardita's property.

Third, Josephine Bellardita was insolvent at the time of the transfers because her liabilities greatly exceeded her assets. This issue will be addressed in more detail in the discussion of constructive fraud.

Fourth, Josephine Bellardita had a special relationship with the transferee, Vita Bella Group Homes. Josephine Bellardita asserted from the beginning that she is the trustee of The Rosario Bellardita Family Trust, and Vita Bella Group Homes is an asset of The Rosario Bellardita Family Trust.

12

Finally, Josephine Bellardita retained the property involved in the putative transfer. Josephine Bellardita transferred the three properties to Vita Bella Group Homes on March 15, 2005, and on August 8, 2005 – less than 5 months later – Vita Bella Group Homes transferred the properties back to Josephine Bellardita, but this time in her capacity as trustee of The Rosario Bellardita Family Trust. Therefore, although the form of title was different, Josephine Bellardita still controlled the properties after the transfers, just as she did before the transfers.

The Plaintiff has met her burden of proof. The existence of the five common badges of fraud, taken together, show actual intent on Josephine Bellardita's part to hinder, delay, or defraud her creditors.

          **b.**       **Proof of actual intent to hinder, delay, or defraud creditors -**
                                **preclusive sanctions.**

The court issued preclusive sanctions against the Defendants as a result of their failure to comply with the court's order compelling the Defendants to respond to the Plaintiff's interrogatories and request for production of documents. The interrogatories and request for production of documents were served on September 24, 2007. At the hearing on the Plaintiff's motions to compel, the court ordered that the Defendants submit full and complete answers to the interrogatories as well as all responsive documents no later than January 8, 2008. The Defendants failed to comply with the court's orders, and the court ordered that the following issues are deemed resolved for purposes of this action:

> (1) Josephine Bellardita's assertion that she is the trustee of an inter vivos trust for Rosario Bellardita is false.
> (2) The purchase of the three real property parcels which are the subject of the lawsuit were not funded by Rosario Bellardita, as the Debtor contends.
> (3) The source of the money in the Merrill Lynch account that is titled in the same of Rosario Bellardita was and is Josephine Bellardita.
> (4) The personal funds of the Debtor were used to purchase the three properties which are the subject of the lawsuit.
> (5) To the extent that The Rosario Bellardita Family Trust nominally contains assets, those assets were transferred to the Trust by Josephine Bellardita.
> (6) The resources and/or credit of Rosario Bellardita was not used to acquire the three real property parcels that are the subject of the lawsuit.
> (7) No assets of Rosario Bellardita or The Rosario Bellardita Family Trust were used to establish Defendant Vita Bella Group

13

Homes, Inc.
(8) No consideration was given by Vita Bella Group Homes, Inc. or by The Rosario Bellardita Family Trust for the three real property transfers alleged in the adversary complaint.

The effect of the preclusive sanctions is that they result in a finding that Josephine Bellardita used her own personal funds to purchase the three properties. Therefore, when Josephine Bellardita transferred the three parcels of real property to Vita Bella Group Homes on March 15, 2005, she put her assets out of the reach of one of her biggest creditors, Cyril Lawrence - just days after he received a judgment against her.

### 2.    Fourth claim for relief: Transfers from Vita Bella Group Homes to Josephine Bellardita as trustee made with actual fraudulent intent

The three real property parcels at issue in this case were transferred from Vita Bella Group Homes to Josephine Bellardita as trustee of The Rosario Bellardita Family Trust on August 8, 2005, according to admitted grant deeds. The Plaintiff alleges in her fourth claim for relief that the transfers by Vita Bella Group Homes were made with actual intent to hinder, delay, or defraud Josephine Bellardita's creditors, in violation of § 548(a)(1)(A).

Section 548(a)(1)(A) applies only to transfers of the debtor. Although Vita Bella Group Homes is not a debtor, the court finds) that Vita Bella Group Homes is an alter ego of the debtor. (See discussion of alter ego liability, infra.)

### B.    Fraudulent Transfer Due to Less Than Reasonably Equivalent Value Received, During or Resulting in Insolvency (11 U.S.C. § 548(a)(1)(B))

Section 548(a)(1)(B) provides an alternate definition of fraudulent transfer. A transfer is fraudulent and thus avoidable by the trustee if the debtor-transferor received less than a reasonably equivalent value in exchange for such transfer, and the debtor was insolvent on the date that such transfer was made or such obligation was incurred. 11 U.S.C. § 548(a)(1)(B)(ii)(I). Additionally, a transfer is fraudulent and thus avoidable by the trustee if the debtor-transferor received less than a reasonably equivalent value in exchange for such transfer, and was engaged or was about to engage in business or a transaction, for which any property

14

remaining with the debtor was an unreasonably small capital. 11 U.S.C. § 548(a)(1)(B)(ii)(II). Thus, there is a threshold requirement that the transfer be for less than reasonably equivalent value in order to find a constructively fraudulent transfer under § 548(a)(1)(B).

Josephine Bellardita does not dispute that the transfers of the three real property parcels were for less than reasonably equivalent value. The grant deeds and title company settlement statements show that Josephine Bellardita paid $74,752.00 for the West 8th Street Property; $71,000.00 for the Juneau Court Property; and $95,000.00 for the D Street property. The parties agree that no money changed hands when Josephine Bellardita transferred the properties to Vita Bella Group Homes. The parties also agree that no money changed hands when Vita Bella Group Homes transferred the properties to Josephine Bellardita in her capacity as trustee of The Rosario Bellardita Family Trust. Thus, the first element required by § 548(a)(1)(B) for fraudulent transfer due to constructive fraud – transfer for less than reasonably equivalent value – is met because Josephine Bellardita paid value for the properties, and when she transferred them to Vita Bella Group Homes for no consideration on March 15, 2005, the consideration-free transfers constituted transfers for less than reasonably equivalent value.

The only issue remaining is whether the transfers were made while Josephine Bellardita was insolvent or resulted in Josephine Bellardita's insolvency, thereby rendering it a fraudulent transfer under § 548(a)(1)(B)(ii)(I). Alternatively, there is an issue as to whether the transfers were made at a time when Josephine Bellardita was engaged in business or a transaction for which any property remaining with her after the transfer was an unreasonably small capital, in violation of § 548(a)(1)(B)(ii)(II). The court will discuss these two claims for relief in order.

> 1.    **Second claim for relief: Transfers from Josephine Bellardita to Vita Bella Group Homes for less than reasonably equivalent value and made while insolvent or resulting in insolvency**

Whether a debtor is "insolvent" requires application of a balance sheet test. See 4 COLLIER ON BANKRUPTCY ¶ 548.05[1][a]. If the sum of the debts is greater than the sum of the assets, at a fair valuation (exclusive of the property transferred with actual fraudulent intent and

1  property that may be exempted from the bankruptcy estate), the debtor is "insolvent." 11 U.S.C.

2  § 101(32)(A).

3      At trial, Josephine Bellardita testified that her assets on the date of the petition were

4  "more or less" as represented in Schedule B of the petition, totaling $1,872.54.[15] Josephine

5  Bellardita testified that she had no other assets besides those listed in Schedule B. She also

6  testified that the sum of her debts was "more or less" $287,518.00, as reflected in Schedule F

7  (creditors holding unsecured nonpriority claims) of her bankruptcy petition.[16] Thus, the sum of

8  Josephine Bellardita's debts ($287,518.00) was greater than the sum of her assets ($1,872.54) at

9  the time of filing, meaning that she was insolvent on October 14, 2005, the date the bankruptcy

10  petition was filed.

11      The question remains, however, whether Josephine Bellardita was insolvent at the time

12  the real property parcels were transferred from Josephine Bellardita to Vita Bella Group Homes,

13  on March 15, 2005. The sum of Josephine Bellardita's assets as of the petition date of October

14  14, 2005 was $1,872.54. Josephine Bellardita testified at trial that she did not transfer any assets

15  in the year preceding the bankruptcy. Thus, the value of her assets between October 14, 2004

16  and October 14, 2005 (the year preceding her bankruptcy) either stayed the same or was lower

17  than the value of her assets as of the date of the petition. In other words, during the one year

18  period preceding the bankruptcy, Josephine Bellardita's assets totaled $1,872.54 or less, but not

19  more. And, given that Josephine Bellardita failed to list in Schedule F when each creditor's

20  claim was incurred, the court is unable to determine whether her liabilities as of the date of the

22      [15]   Schedule B (personal property) lists Josephine Bellardita's assets at the time of
23  filing as consisting of cash on hand, a checking account, a retainer deposit with former counsel,
household furnishings, clothing, jewelry, and a fax machine. Additionally, "public retirement
24  benefits, social security benefits, disability" is listed with a value of "unknown." Josephine
25  Bellardita's Schedule A (real property) lists no assets.

26      [16]   Josephine Bellardita filed an amendment to Schedule F on October 28, 2005,
27  which included two new credit card debts and showed the new sum of her debts as $349,913.58.
At trial, the Plaintiff questioned Josephine Bellardita on the basis of Schedule F as it appeared in
28  her petition, and Josephine Bellardita did not disagree with the Plaintiff that at the time of filing,
she owed approximately $287,518.00 to creditors.

16

transfers (March 15, 2005) were the same as her liabilities as of the date of the petition (October 14, 2005). It is clear, however, that there is a great difference between Josephine Bellardita's assets ($1,872.54) and her liabilities ($287,518.00). Of all of the debts listed in Josephine Bellardita's Schedule F, only one is for an amount less than $1,872.54 – a $1,500.00 debt owed to a law firm for attorney's fees.

The court concludes that the Plaintiff has met her burden of proof in showing, by a preponderance of the evidence, that Josephine Bellardita was insolvent on the date of the transfers or became insolvent as a result of the transfers. Therefore, Josephine Bellardita's transfers of the three parcels of real property to Vita Bella Group Homes on March 15, 2005 were constructively fraudulent transfers under § 548(a)(1)(B)(ii)(I).

> **2.      Third claim for relief: Transfers from Josephine Bellardita to Vita Bella Group Homes for less than reasonably equivalent value and resulting in unreasonably small capital**

The Plaintiff also argues that Josephine Bellardita's transfers of the real property parcels were constructively fraudulent under § 548(a)(1)(B)(ii)(II). To find fraudulent transfer under this section, the transfer must have been less than a reasonably equivalent value and must have been made at a time when the debtor was engaged in a business for which any property remaining with the debtor after the transfer was an unreasonably small capital. As discussed earlier, the transfers were made for less than a reasonably equivalent value because no consideration was paid for the properties. However, § 548(a)(1)(B)(ii)(II) is a provision that only applies to business debtors. See 4 NORTON BANKR. L. & PRAC. 3d § 67:5 (2008) (Section 548(a)(1)(B)(ii)(II) "is the only ground under [Bankruptcy] Code § 548 . . . that is confined solely to business debtors."). The Plaintiff has failed to show that Josephine Bellardita was a business debtor.

**II.    Alter Ego Liability (5th claim for relief)**

The Plaintiff additionally asserts, in her fifth claim for relief, that "[a]t all relevant times, Josephine Bellardita acting in her individual capacity, Josephine Bellardita acting on behalf of Vita Bella Group Homes, and Josephine Bellardita acting as trustee of The Rosario Bellardita Family Trust, were alter egos of one another."

17

1    An alter ego claim is a claim of an abuse of the corporate privilege, such that the

2    equitable owner of the corporation should be held liable for the actions of the corporation.

3    Roman Catholic Archbishop v. Superior Court, 15 Cal. App. 3d 405, 411 (Cal. Ct. App. 1971)

4    (citing Minton v. Cavaney, 56 Cal. 2d 576, 579 (Cal. 1961)). The purpose behind the alter ego

5    doctrine is to declare that the individual and the corporation are the same entity. 15 CAL. JUR.

6    3D Corporations § 22 (2008).

7    In the context of a bankruptcy case, the application of the alter ego doctrine brings the

8    assets of a debtor's alter ego into the bankruptcy estate. See Suhl v. Bumb, 348 F.2d 869, 873

9    (9th Cir. 1965), cert. denied, 382 U.S. 938 (U.S. Dec. 6, 1965)(No. 528). The Plaintiff, as the

10   trustee, has standing to assert an alter ego claim. See Towe v. Martinson, 195 B.R. 137, 140 (D.

11   Mont. 1996). Although the alter ego concept is most often applied to corporations, it also applies

12   to trusts. In re Gillespie, 269 B.R. 383, 392 (Bankr. E.D. Ark. 2001)(citing Vaughn v. Sexton,

13   975 F.2d 498, 504 (8th Cir. 1992)). Therefore, the Plaintiff's alter ego claim is properly pleaded.

14   The plaintiff bears the burden of overcoming the presumption of the separate existence of

15   the corporate entity. Mid-Century Ins. Co. v. Gardner, 9 Cal. App. 4th 1205, 1212 (Cal. Ct. App.

16   1992). As a general rule, the conditions under which a corporate entity may be disregarded vary

17   according to the circumstances in each case. Automotriz Del Golfo De California v. Resnick, 47

18   Cal. 2d 792, 796 (Cal. 1957). However, there are two general requirements that must be met for

19   the alter ego doctrine to apply. First, there must be such a unity of interest and ownership

20   between the corporation and the individual or organization controlling it that their separate

21   personalities no longer exist. Id. Second, a failure to disregard the corporate entity would result

22   in an inequitable result. Id.; see also Communist Party v. 522 Valencia, Inc., 35 Cal. App. 4th

23   980, 993 (Cal. Ct. App. 1995), rev. denied (Cal. Sept. 13, 1995)(failure to disregard the corporate

24   entity would sanction a fraud or promote injustice.)

25   The preclusive sanctions support a finding that Vita Bella Group Homes and The Rosario

26   Bellardita Family Trust are alter egos of Josephine Bellardita. Additionally, there are other

27   grounds for a determination that Vita Bella Group Homes and The Rosario Bellardita Family

28   Trust are alter egos of Josephine Bellardita.

18

In <u>Mid-Century Ins. co. v. Gardner</u>, the California Court of Appeal for the Third District summarized the relevant factors that should be considered in determining whether a corporate veil was properly pierced.

> The relevant considerations include: the commingling of funds and other assets; the failure to segregate funds of the individual and the corporation; the unauthorized diversion of corporate funds to other than corporate purposes; the treatment by an individual of corporate assets as his own; the failure to seek authority to issue stock or issue stock under existing authorization; the representation by an individual that he is personally liable for corporate debts; the failure to maintain adequate corporate minutes or records; the intermingling of the individual and corporate records; the ownership of all the stock by a single individual or family; the domination or control of the corporation by the stockholders; the use of a single address for the individual and the corporation; the inadequacy of the corporation's capitalization; the use of the corporation as a mere conduit for an individual's business; the concealment of the ownership of the corporation; the disregard of formalities and the failure to maintain arm's-length transactions with the corporation; and the attempts to segregate liabilities to the corporation.

<u>Mid-Century Ins. Co. v. Gardner</u>, 9 Cal. App. 4th at 1213 n.3 (citing <u>Associated Vendors, Inc. v. Oakland Meat Co.</u>, 210 Cal. App. 2d 825, 838-40 (Cal. Ct. App. 1962)).

Of these considerations, the court finds that several are present - the treatment by an individual of trust assets as the individual's own, the use of a single address for the individual and the trust, and the disregard of formalities.

Josephine Bellardita treated the "trust assets" as her own and, in fact, the court finds that the evidence supports that the trust assets are actually Josephine Bellardita's own assets. Josephine Bellardita stated during her state court depositions that she personally funded the accounts and personally purchased the group homes. Josephine Bellardita took title to the three real property parcels in her name alone, as a single or unmarried woman. Escrow receipts for the purchases of all three properties show that funds were received from Josephine Bellardita, and were credited to Josephine Bellardita's escrow account. She was listed as the sole borrower in the settlement statements and deeds of trust for the properties. She was also the recipient of the truth-in-lending disclosure statements. Furthermore, Defendants' Exhibit 25 is a letter from a Merrill Lynch Credit Corporation loan officer, dated March 7, 2001, to Josephine Bellardita's worker's compensation claims representative, requesting verification of Josephine Bellardita's worker's compensation income. This verification letter preceded the deed of trust to the Juneau

1   Court Property recorded on March 26, 2001, in which Josephine Bellardita was identified as the

2   trustor or borrower, and Merrill Lynch Credit Corporation was identified as the beneficiary or

3   lender. Merrill Lynch sought to verify Josephine Bellardita's worker's compensation income

4   prior to loaning her the $71,000.00 to finance the Juneau Court Property. Thus, Merrill Lynch

5   Credit Corporation considered Josephine Bellardita, the individual, to be the borrower - not The

6   Rosario Bellardito Family Trust. This further supports the court's holding that the trust assets

7   belong to Josephine Bellardita, not to Rosario Bellardita.

8          Josephine Bellardito, Rosario Bellardita, and Vita Bella Group Homes all used a single

9   address and all received mail at Josephine Bellardita's home on "R" Street in Merced, California.

10  County Bank checking account statements were mailed to "Josephine Bellardita, Rosario

11  Bellardita" (on two separate lines) at Josephine Bellardita's mailing address. Merrill Lynch

12  account statements were mailed to "Rosario Bellardita" at Josephine Bellardita's mailing

13  address. Additionally, a Wells Fargo checking account was established for Vita Bella Group

14  Homes with a mailing address at Josephine Bellardita's home.

15         The formalities were disregarded. Josephine Bellardita took title to the three real property

16  parcels in her name alone, as a single or unmarried woman. Escrow receipts for the purchases of

17  all three properties show that funds were received from Josephine Bellardita (with no specific

18  identification of her as a trustee), and were credited to Josephine Bellardita's escrow account

19  (again with no specific identification of her as a trustee). She was listed as the borrower in the

20  settlement statements and deeds of trust for the properties, and she received the truth-in-lending

21  disclosure statements. In all of the financing documents, Josephine Bellardita was always named

22  "Josephine Bellardita," with no reference to her being a trustee.

23         The evidence shows that Josephine Bellardita funded the trust and paid for the group

24  homes. Both Vita Bella Group Homes and The Rosario Bellardita Family Trust are alter egos of

25  Josephine Bellardita.

26

27  **III.    Nature and Extent of Plaintiff's Interests (6th claim for relief)**

28         The Plaintiff requests, in her sixth claim for relief, that the court provide an order

20

determining the nature, extent, and validity of the Defendants' interests in the subject real property parcels. Section 550(a) of the Bankruptcy Code provides that the avoidance of a transfer under § 548 gives the trustee the right to recover, for the benefit of the estate, the property transferred or the value of the property transferred. 11 U.S.C. § 550(a). There are two transfers that must be examined - the March 15, 2005 transfers from Josephine Bellardita as an individual to Vita Bella Group Homes (the "first transfers") and the August 8, 2005 transfers from Vita Bella Group Homes to Josephine Bellardita as trustee of The Rosario Bellardita Family Trust (the "second transfers"). Because the court has already determined that Josephine Bellardita's pre-petition transfers were fraudulent transfers, the first transfers are void.

As for the second transfers, § 5489c) of the Bankruptcy Code protects good faith transferees. Pursuant to § 548(c), a transferee that takes for value and in good faith has a lien on or may retain any interest transferred, to the extent that such transferee gave value to the debtor in exchange for such transfer. 11 U.S.C. § 548(c). However, in this case, the court concludes that Vita Bella Group Homes is not a good faith transferee because it did not pay value for the three parcels of real property, and, in any event, is the alter ego of the debtor.

Further, Vita Bella Group Homes is not a good faith transferee because it did not take in good faith. One indicator of good faith is an arm's length transaction. See Bullard v. Aluminum Co. of America, 468 F.2d 11, 13 (7th Cir. 1972). Vita Bella Group Homes is owned and controlled by The Rosario Bellardita Family Trust, of which Josephine Bellardita is the trustee. It and the trust are alter egos of Josephine Bellardita. Therefore, the transaction was not an arm's length transaction.

Finally, the court observes that Josephine Bellardita and Vita Bella Group Homes engaged in a multitude of transfers over the course of four years, between October 2001 and August 2005. The series of transfers first from Josephine Bellardita as a single woman to Vita Bella Group Homes, then from Vita Bella Group Homes back to Josephine Bellardita as a single woman, then from Josephine Bellardita as a single woman to Vita Bella Group Homes, then finally from Vita Bella Group Homes to Josephine Bellardita as trustee of The Rosario Bellardita Family Trust, leads to the conclusion that the transfers were all illusory in nature. Therefore,

Vita Bella Group Homes is not a good faith transferee entitled to any protection under the Bankruptcy code. Because the court concludes that Vita Bella Group Homes is not a god faith transferee, § 550(e) does not apply. Section 550(e) of the Bankruptcy Code provides that a good faith transferee has a lien on the property recovered to secure the lesser of the costs of improvements or any increase in the value of the property as a result of such improvements made. 11 U.S.C. § 550(e).

The Plaintiff is entitled to recover all three real property parcels.

## CONCLUSION

For the foregoing reasons, the court finds that the debtor, Josephine Bellardita, acted with actual fraudulent intent in transferring the three parcels of real property, 1791 West 8th Street, Merced, California 95340; 3156 Juneau Court, Merced, California, 95340; and 919 D Street, Merced, California 95340, in violation of § 548(a)(1)(A). Additionally, the court concludes that Josephine Bellardita's transfers were constructively fraudulent as no reasonably equivalent value was received for the transfers, and the transfers were made while she was insolvent, in violation of § 548(a)(1)(B)(ii)(I). Therefore, the court finds for the Plaintiff as to the Plaintiff's first and second claims for relief. Additionally, the court finds for the Plaintiff as to her fifth claim for relief for alter ego.

Accordingly, the transfers of the aforementioned real property are void. Counsel for the Plaintiff shall submit a proposed form of judgment consistent herewith.

DATED: September _19_, 2008.

WHITNEY RIMEL
United States Bankruptcy Judge

22

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA )
                     ) ss.
COUNTY OF FRESNO     )

I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within above-entitled action; my business address is 2500 Tulare Street, Suite 2501, Fresno, California, 93721. On September 19, 2008, I served the within document on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Fresno, California, addressed as follows:

Jeffrey L. Wall, Esq.
563 E. Salem Ave.
Fresno, CA 93720

Beth Maxwell Stratton
Chapter 7 Trustee
P. O. Box 3930
Pinedale, CA 9365o

Josephine Bellardita
P. O. Box 3753
Merced, CA 95344

Josephine Bellardita
2928 R Street
Merced, CA 95348

I certify (or declare), under penalty of perjury, that the foregoing is true and correct. Executed on September 19, 2008, at Fresno, California.

Kathy Torres

Kathy Torres, PLS

23